UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| ROBERT L. HOLLEMAN, | ) |
| Plaintiff, | ) |
| v. | ) No. 2:16-cv-00305-JRS-DLP |
| DUSHAN ZATECKY, DUANE ALSIP, PAULA DICKSON, JACK HENDRIX, MICHAEL OSBORN, DICK BROWN, | ) |
| Defendants. | ) |

**Entry Granting Defendants' Motion for Summary Judgment
and Directing Entry of Final Judgment**

Robert Holleman asserts that six employees of the Indiana Department of Correction--Defendants Warden Dick Brown, Warden Dushan Zatecky, Director of Classification Paula Dickson, Assistant Warden Duane Alsip, Classification Analyst Michael Osburn and Classification Supervisor Jack Hendrix--retaliated against him by moving him from one maximum security prison to another because he filed a lawsuit and spoke to the media which resulted in the publication of a negative newspaper article. This lawsuit seeks money damages for which Defendants would be personally liable and transfer back to Pendleton Correctional Facility. Defendants argue that they are entitled to summary judgment because a transfer between two maximum security prisons is not likely to deter a prisoner's First Amendment activity, the decision to transfer Holleman was made without any improper motive, and they are entitled to qualified immunity.

## I. Standard of Review

A motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). As the current version of Rule 56 makes clear, whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1)(A). A party can also support a fact by showing that the materials cited do not establish the absence or presence of a genuine dispute or that the adverse party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1)(B). Affidavits or declarations must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on matters stated. Fed. R. Civ. P. 56(c)(4). Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially in the grant of summary judgment. Fed. R. Civ. P. 56(e).

In deciding a motion for summary judgment, the Court need only consider disputed facts that are material to the decision. A disputed fact is material if it might affect the outcome of the suit under the governing law. *Williams v. Brooks*, 809 F.3d 936, 941-42 (7th Cir. 2016). In other words, while there may be facts that are in dispute, summary judgment is appropriate if those facts are not outcome-determinative. *Montgomery v. American Airlines Inc.*, 626 F.3d 382, 389 (7th Cir. 2010). Fact disputes that are irrelevant to the legal question will not be considered. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

"When summary judgment is sought on a qualified immunity defense, the court inquires whether the party opposing the motion has raised any triable issue barring summary adjudication."

*Ortiz v. Jordan*, 562 U.S. 180, 184 (2011). The Court views the record in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Skiba v. Illinois Cent. R.R. Co.*, 884 F.3d 708, 717 (7th Cir. 2018). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014). The Court need only consider the cited materials, Fed. R. Civ. P. 56(c)(3), and the Seventh Circuit Court of Appeals has repeatedly assured the district courts that they are not required to "scour every inch of the record" for evidence that is potentially relevant to the summary judgment motion before them. *Grant v. Trustees of Indiana University,* 870 F.3d 562, 573-74 (7th Cir. 2017). Any doubt as to the existence of a genuine issue for trial is resolved against the moving party. *Ponsetti v. GE Pension Plan*, 614 F.3d 684, 691 (7th Cir. 2010).

## II. Material Facts

From 2012 to November 2015, Holleman was incarcerated at Pendleton Correctional Facility ("Pendleton").

On April 30, 2014, Holleman sued Zatecky, Gilley, Francum, Cole, Alsip and Johnson, for filing a false report of conduct and terminating his law library job and honor dorm placement in retaliation for exercising his First Amendment rights. That action, *Holleman v. Zatecky,* 1:14-cv-671-TWP-DML, was resolved through settlement on September 1, 2017.

While that case was pending, on March 16, 2015, Holleman sued Zatecky, Alsip, Krause, Hill, Williams, Reed, and Dickson alleging that they left him in cold conditions during the winter months in 2014 in H-cell house and that Holleman was later moved to O-Dorm and then out of O-Dorm in retaliation for exercising his First Amendment rights. That action was docketed as *Holleman v. Zatecky*, 1:15-cv-441-SEB-DKL. In that civil action, the defendants agreed not to

move Holleman out of Pendleton until after his November 12, 2015, parole board hearing. Dkt. 106 at p. 1-2 (Pl.'s Resp. Brief). That case was resolved through settlement on December 17, 2018. *See Holleman v. Zatecky*, 1:15-cv-441-SEB-DKL.

On September 25, and 28, 2015, Holleman wrote letters complaining that water was pooling in the basement of his housing unit and complaining of the anticipated future use of sack lunches at Pendleton.

On October 11, 2015, the Anderson Herald Bulletin published a negative story concerning the medical care at Pendleton. Dkt. 106 at p. 3. Holleman was interviewed for this story.

That same month, Zatecky asked Brown if he had any offenders that he wanted to transfer in exchange for Holleman, "as far as sending that offender to Pendleton and then sending [Mr. Holleman] to Wabash Valley." Dkt. 100-3, Brown Dep. at 10:7-10:25, 18:9-11.

Zatecky requested the transfer because Holleman had written letters to various entities complaining of the conditions at the Pendleton Correctional Facility, and with the multitude of complaints and grievances it became apparent, due to the age of the facility, that the only viable solution was to transfer Holleman to a more modern facility. Dkt. 100-2 at 7 (Zatecky Interrogatory Responses at No. 10). In other words, Holleman needed a "change of scenery," and the Warden "felt that it would be in [Mr. Holleman's] best interest to transfer to another facility." Dkt. 100-3, Brown Dep. at 11:11-15.

On October 15, 2015, Brown sent an email to Zatecky noting that Wabash Valley would exchange another offender for Mr. Holleman. The email states that the other offender "is a huge grievance filer and that is why staff selected him for the trade." Dkt. 100-4 at 2. This email was forwarded by Zatecky to Cole and Dickson with the following statement, "FYI we will swap Holleman for [another offender]." Dkt. 100-5. Osburn approved the transfer on October 15, 2015.

Dkt. 100-4 at 1.

On October 28, 2015, Hendrix signed a Transfer Authority form directing that Holleman was to be transferred from Pendleton to Wabash Valley. Dkt. 100-6. This Transfer Authority was then canceled. Dkt. 100-7. On November 19, 2015, Alsip signed an Offender Transport Order, which gave authority to release Holleman for transport in the custody of transporting staff. Dkt. 100-8. On November 20, 2015, Hendrix signed another Transfer Authority form, directing that Holleman was to be transferred from Pendleton to Wabash Valley. Dkt. 100-9.

On November 20, 2015, Holleman was transferred from Pendleton to Wabash Valley. Holleman has experienced a harsher environment at Wabash Valley. In particular, at Wabash Valley, he has been placed in a two-man cell. He was in a one-man cell with more individual space and privacy while at Pendleton. He has less law library time at Wabash Valley (seven hours per week at Pendleton, versus four hours per week at Wabash Valley. Dkt. 106 at p. 31; dkt. 6 (Am. Compl. ¶¶ 30-35). Holleman also testified that he faces more violence at Wabash Valley. Dkt. 106-1 at ¶¶ 8, 37.

On December 25, 2015, Mr. Hollman sent a letter to Warden Brown stating his plans to file additional lawsuits. Dkt. 100-10.

### III. Discussion

Defendants argue that they are entitled to judgment as a matter of law based on qualified immunity. "Qualified immunity attaches when an official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *White v. Pauly.* 137 S.Ct. 548, 551 (2017) (citation omitted) (internal quotation marks omitted). "[T]wo central questions must be addressed in the course of determining whether qualified

immunity is available: whether the plaintiff has alleged a deprivation of a constitutional right at all, and whether the right at issue was clearly established at the time and under the circumstances presented." *Bianchi v. McQueen*, 818 F.3d 309, 319 (7th Cir. 2016) (citation omitted).

To make a qualified immunity determination, the Court must "(1) determine whether the plaintiff has alleged the deprivation of an actual constitutional right and (2) if so, determine whether that right was clearly established at the time of the alleged violation." *Sparing v. Village of Olympia Fields,* 266 F.3d 685, 688 (7th Cir. 2001) (*citing Saucier v. Katz*, 533 U.S. 194 (2001) (citations omitted)). Once raised, the plaintiff, not the defendant, carries the burden of overcoming the affirmative defense. *Sparing*, 266 F.3d at 688 (*citing Spiegel v. Cortese*, 196 F. 3d 717 (7th Cir. 1999)*.* In *Pearson v. Callahan*, 555 U.S. 223, 236 (2009), the Supreme Court "held that courts may grant qualified immunity on the ground that a purported right was not 'clearly established' by prior case law, without resolving the often more difficult question whether the purported right exists at all." *Id.* at 227 (*Reichle v. Howards*, 566 U.S. 658, 664 (2012)).

This Court's analysis must follow the Supreme Court's rulings. In this regard, *Mullenix v. Luna,* 136 S.Ct. 305 (2015) is instructive. The Supreme Court explained:

> A clearly established right is one that is "sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Reichle v. Howards,* 566 U.S. ——, ——, 132 S.Ct. 2088, 2093, 182 L.Ed.2d 985 (2012) (internal quotation marks and alteration omitted). "We do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al–Kidd,* 563 U.S. 731, 741, 131 S.Ct. 2074, 179 L.Ed.2d 1149 (2011). Put simply, qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs,* 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986).
> "We have repeatedly told courts ... not to define clearly established law at a high level of generality." *al–Kidd, supra,* at 742, 131 S.Ct. 2074. The dispositive question is "whether the violative nature of *particular* conduct is clearly established." *Ibid.* (emphasis added). This inquiry "'must be undertaken in light of the specific context of the case, not as a broad general proposition.'" *Brosseau v.*

6

> *Haugen,* 543 U.S. 194, 198, 125 S.Ct. 596, 160 L.Ed.2d 583 (2004) (*per curiam*) (quoting *Saucier v. Katz,* 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001)).

*Mullenix*, 136 S. Ct. at 308. Given the facts in this case, this Court cannot say that only someone "plainly incompetent" or who "knowingly violate[s] the law" would have perceived that transferring Holleman away from the conditions he complained of at Pendleton violated Holleman's First Amendment rights.

To prevail on a First Amendment retaliation claim, Holleman must show that "(1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was 'at least a motivating factor' in the Defendants' decision to take the retaliatory action." *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009) (quoting *Woofruff v. Mason*, 542 F.3d 545, 551 (7th Cir. 2008)); *see also Mays v. Springborn*, 719 F.3d 631, 635 (7th Cir. 2013). First, there is no dispute that Holleman engaged in activity protected by the First Amendment. "A prisoner has a First Amendment right to make grievances about conditions of confinement," *Watkins v. Kasper*, 599 F.3d 791, 798 (7th Cir. 2010), and to file lawsuits. *McKinley v. Schoenbeck*, 731 F. App'x 511, 515 (7th Cir. 2018) (*citing Babcock v. White*, 102 F.3d 267, 276 (7th Cir. 1996). This is clearly established. Second, the evidence taken in the light most favorable to Holleman also reflects that his First Amendment activities were a motivating factor in Defendants' decision to take steps to transfer him.

Whether Defendants' conduct would "deter a person of ordinary firmness" from exercising his First Amendment rights is an objective test. *See, e.g., Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009). The "retaliatory action need not actually deter the plaintiff from persisting with First

Amendment activity; an objective test determines whether retaliatory actions would deter a person of 'ordinary firmness' from engaging in the protected activity." *McKinley,* 731 F. App'x 511, at 515 (*citing Surita v. Hyde*, 665 F.3d 860, 878–79 (7th Cir. 2011)). For example, placement in administrative detention for a sufficient period of time satisfies the burden to prove an adverse action likely to deter future First Amendment activity. *Id.* at 514 (citing *Babcock* 102 F.3d at 275 (7th Cir. 1996)). "A beating would also deter an ordinary person from exercising his or her First Amendment rights." *Id.* at 515. On the other hand, not every instance of retaliatory conduct amounts to a constitutional violation. "It would trivialize the First Amendment to hold that harassment for exercising the right of free speech was always actionable no matter how unlikely to deter a person of ordinary firmness from that exercise." *Bart v. Telford*, 677 F.2d 622, 625 (7th Cir. 1982).

In this case, Holleman complained about the conditions of his confinement at Pendleton and was transferred to another prison that did not have the same offending conditions. Holleman's placement at Pendleton was not working as evidenced by his many complaints, grievances, and lawsuits. Under these circumstances it was reasonable to for Defendants to look for a new placement. There is no basis to conclude that any Defendant understood the transfer from one maximum security facility another to be adverse when Mr. Holleman was persistently complaining that the conditions of his confinement at Pendleton violated his Eighth Amendment right to be free from cruel and unusual punishment. To the contrary, Zatecky testified that he moved Holleman because it became apparent, due to the age of Pendleton, that a move to a more modern facility was the only viable solution. Zatecky's motivation was the reasonable belief that the transfer was in Holleman's best interest.

There is no evidence that the transfer was an effort to punish Mr. Holleman for exercising his First Amendment rights. *See also O'Neal v. City of Chicago*, 392 F.3d 909, 911–12 (7th Cir.

2004) (noting, in the employment context, that a "purely lateral transfer" that "does not involve a demotion in form or substance" is not actionable). This is true even if Holleman no longer has the opportunity to live in a one-man cell, has less law library time, and witnesses more violence. There is no evidence that suggests Holleman was transferred so that he would be subjected to these discomforts.[1]

This transfer decision, like many other difficult day-to-day judgments made by prison officials, should be given deference. *Babcock*, 102 F.3d at 275. Indeed, it has been recognized that courts "should afford appropriate deference and flexibility to prison officials in the evaluation of proffered legitimate penological reasons for conduct alleged to be retaliatory." *Id.*; *see also Turner v. Safley*, 482 U.S. 78, 89 (1987) (internal quotations omitted) ("[P]rison administrators . . . and not the courts, [are] to make the difficult judgments concerning institutional operations"); *Thomas v. Ramos*, 130 F.3d 754, 764 (7th Cir. 1997) ("We have previously held on numerous occasions that federal courts are most reluctant to interfere with the internal administration of state prisons because they are less qualified to do so than prison authorities."); *Shango v. Jurich*, 681 F.2d 1091, 1102 (7th Cir. 1982) (quoting *Meachum v. Fano*, 427 U.S. 215, 229 (1976)) (reversing a trial court for abusing its discretion by ordering a transfer and noting that "[s]uch discretionary decisions are the business of penologists and 'are not the business of federal judges'").

Holleman argues that summary judgment should be denied because the First Amendment prohibits Warden Zatecky from transferring him anywhere based on his letters of complaint and grievances concerning prison conditions. Dkt. 112-1 at p. 9. This argument is not supported by

---

[1] Holleman states in his supplemental affidavit that "[b]ased on each Defendants position in the IDOC they were each aware that the level of violence at Wabash was and is greater that [sic] at Pendleton." Dkt. 112-2 at 6. This testimony is not based on personal knowledge and is not admissible evidence. Fed. R. Civ. P. 56(c)(4).

clearly established law. The clearly established right cannot be defined at a high level of generality by saying only that the right to be free of retaliation is established. *See City of Escondido, Cal. v. Emmons*, No. 17-1660, 2019 WL 113027, at *3 (U.S. Jan. 7, 2019) (reversing Court of Appeals because formulation of the clearly established right was far too general). To follow Holleman's line of logic, if an inmate complains about conditions in his cell, prison officials would be prohibited from moving the complaining inmate to another cell to alleviate the complained of condition. When a prisoner uses any form of protected speech to allege an ongoing unconstitutional condition of confinement, there is no clearly established law that prohibits prison officials from taking some action so that the inmate no longer experiences the offending condition. Thus, it was not clearly unreasonable for prison officials to consider Holleman's complaints about his prison conditions at Pendleton and to decide that transferring him to another prison would remove him from the complained of conditions.

In response to Defendants' request for qualified immunity, Holleman argues that if this Court finds that qualified immunity applies, every prison warden would immediately transfer prisoners to more modern facilities when they write letters or grieve conditions rather than fixing the offending condition at the facility. Dkt. 106 at p. 33. This argument is not persuasive. The law requires that prison officials be given wide latitude when determining how to respond to a prisoner's complaint regarding prison conditions. Removing a prisoner from the condition of which he complains is reasonable. It was not clearly established that transferring Holleman from a facility that he persistently complained about to another facility with the same security level would violate Holleman's constitutional rights. But most important, no Supreme Court case or "robust consensus of cases of persuasive authority" in the Courts of Appeals establishes the right

to remain placed in a particular prison or housing unit after complaining that the conditions in that prison violate your constitutional rights. *See Taylor v. Barkes*, 135 S. Ct. 2042, 2044 (2015).

In addition, even if a Warden-initiated prisoner swap is not specifically set forth in policy, or if administrative mistakes were made in processing the transfer, such a fact does not itself negate qualified immunity where it would otherwise be warranted. *City & Cty. of San Francisco, Calif. v. Sheehan*, 135 S. Ct. 1765, 1777 (2015) (stating "[e]ven if an officer acts contrary to her training, however, (and here, given the generality of that training, it is not at all clear that Reynolds and Holder did so), that does not itself negate qualified immunity where it would otherwise be warranted.").

In summary, Defendants are entitled to qualified immunity because their actions were not clearly unconstitutional under the circumstances.

## IV. Conclusion

Defendants are entitled to judgment as a matter of law on their qualified immunity defense. The motion for summary judgment, dkt [98], is **granted.**

Judgment consistent with this Entry shall now issue.

**IT IS SO ORDERED.**

Date: 1/18/2019

_____
JAMES R. SWEENEY II, JUDGE
United States District Court
Southern District of Indiana

Distribution:

ROBERT L. HOLLEMAN
10067
WABASH VALLEY - CF
WABASH VALLEY CORRECTIONAL FACILITY - Inmate Mail/Parcels
Electronic Service Participant – Court Only

David C. Dickmeyer
INDIANA ATTORNEY GENERAL
David.Dickmeyer@atg.in.gov

Jefferson S. Garn
INDIANA ATTORNEY GENERAL
Jefferson.Garn@atg.in.gov

Ryan J. Guillory
OFFICE OF ATTORNEY GENERAL CURTIS HILL
ryan.guillory@atg.in.gov